Michael F. Ram (SBN 104805)
mfr@lrolaw.com
Karl Olson (SBN 104760)
ko@lrolaw.com
LEVY, RAM & OLSON
639 Front Street, Fourth Floor
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

*Counsel for Mr. Cohen and Proposed Liaison Counsel for the Class*

| | |
|---|---|
| Kim E. Miller (SBN 178370)<br>KAHN GAUTHIER SWICK, LLC<br>12 E. 41st St., Ste. 1200<br>New York, New York 10017<br>Telephone: (212) 696-3730<br>Facsimile: (504) 455-1498<br>E-mail: kim.miller@kgscounsel.com | Lewis S. Kahn<br>KAHN GAUTHIER SWICK, LLC<br>650 Poydras Street, Ste. 2150<br>New Orleans, LA 70130<br>Telephone: (504) 455-1400<br>Facsimile: (504) 455-1498<br>E-mail: lewis.kahn@kgscounsel.com |
| *Counsel for Mr. Cohen and Proposed Lead Counsel for the Class* | *Counsel for Mr. Cohen and Proposed Lead Counsel for the Class* |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NVIDIA CORPORATION SECURITIES LITIGATION<br><br>This Document Relates To: All Actions | MASTER FILE NUMBER:<br>CIVIL ACTION NO. 08-CV-4260-JW<br><br>Date: Monday, December 22, 2008<br>Time: 9:00 A.M.<br>CTRM: 8, 4th Floor |

**LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL**

# TABLE OF CONTENTS

ARGUMENT ...........................................................................................................................1

I.   Mr. Cohen is the Presumptive Lead Plaintiff and That Presumption Has Not Been Rebutted ........................................................................................................................1

   A.   Mr. Cohen has the Largest Losses of All Competing Movants ............................1

   B.   Mr. Cohen Otherwise Meets the Requirements of Rule 23 ...................................4

      1.   Mr. Cohen Is Adequate and Typical ...........................................................4

II.  The Competing Movants Are Inadequate ................................................................7

   A.   The New Jersey Carpenters Funds Are Not the Presumptive Lead Plaintiff and Have Not Rebutted the Presumption in Favor of Mr. Cohen .............................7

   B.   The Krishnamurthy Group Is Not the Presumptive Lead Plaintiff and Has Not Rebutted the Presumption in Favor of Mr. Cohen ................................................9

   C.   IBEW Is Not the Presumptive Lead Plaintiff and Has Not Rebutted the Presumption in Favor of Mr. Cohen .....................................................................10

   D.   CPGR Is Not the Presumptive Lead Plaintiff and Has Not Rebutted the Presumption in Favor of Mr. Cohen .....................................................................10

   E.   Kazanchian Is Not the Presumptive Lead Plaintiff and Has Not Rebutted the Presumption in Favor of Mr. Cohen .....................................................................12

CONCLUSION......................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Eichenholtz v. Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) ......................................................................................................................... 2, 9

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265, 2004 U.S. Dist. LEXIS 10200 (E.D. Pa. June 3, 2004) ............................................................................................................. 10

*In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398 (S.D.N.Y. 2006) ............................................. 3

*In re Gemstar-TV Guide Int'l, Inc. Secs. Litig.*, 209 F.R.D. 447 (C.D. Cal. 2002) .............................. 10

*In re Optionable Sec. Litig.*, 07 Civ. 3753 (LAK) (S.D.N.Y. November 20, 2007) ............................. 5

*In re Plaza Hotel Corp.*, 123 B.R. 466 (B.A.P. 9th Cir. 1990) ............................................................ 11

*In re Royal Ahold N.V. Sec. and ERISA Litig.*, 219 F.R.D. 343 (D. Md. 2003) ................................. 12

*In re Vonage IPO Sec. Litig.*, Civil No. 07-177-FLW, 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2008) .................................................................................................................. 7

*Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997) ............................................................................................................................ 9

*Miller v. Dyadic Int'l, Inc*. 2008 U.S. Dist. LEXIS 32271 (S.D. Fl. April 18, 2008) ........................... 3

*Mohanty v. Bigband Networks, Inc.*, 2008 U.S. Dist. LEXIS 32764 (N.D. Cal. Feb. 13, 2008 .......... 10

*Ravens v. Iftikar*, 174 F.R.D. 651 (N.D. Cal. 1997) ............................................................................ 6

*Schoenbaum v. Firstbrook*, 405 F.2d 200 (2d Cir. 1968) .................................................................. 12

*Snipper, Wainer & Markoff v. United States Trustee (In re Internet in a Mall,. Inc.)*, 2000 U.S. App. LEXIS 8257 (9th Cir. Apr. 24, 2000) .................................................................. 11

*Tsirekidze v. Syntax–Brillian Corp.*, CV-07-2204-PHX-FJM, Order Consolidating and Appointing Lead Plaintiff and Lead Counsel (April 4, 2008) ........................................... 6


**Statutes**

15 U.S.C. § 78aa .................................................................................................................. 12

15 U.S.C. § 78u-4(a) ............................................................................................................. 5

15 U.S.C. § 78u-4(a)(3)(A) ................................................................................................... 6

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

iii

15 U.S.C. § 78u-4(a)(3)(A)(i) .................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(A)(i)-(ii) ............................................................................................. 5

15 U.S.C. § 78u-4(a)(3)(A)(ii) .................................................................................................. 5

15 U.S.C. § 78u-4(a)(3)(B) ....................................................................................................... 4

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................................ 7, 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb) .......................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ............................................................................................ 3

28 U.S.C. §§ 1391(b) and (c) .................................................................................................. 12

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................................... 4

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

iv

# ARGUMENT

## I. Mr. Cohen is the Presumptive Lead Plaintiff and That Presumption Has Not Been Rebutted

### A. Mr. Cohen has the Largest Losses of All Competing Movants

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA), Roberto Cohen is the presumptive lead plaintiff with "the largest financial interest in the relief sought by the class" among movants seeking to be appointed lead plaintiff[1], *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb), and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.*, at (a)(3)(B)(iii)(cc). However, opposing movants seek to obfuscate Mr. Cohen's losses in this matter through the use of a variety of transparently improper accounting methods that have no place in securities litigation governed by the PSLRA, and that fail to follow Generally Accepted Accounting Principles ("GAAP") for that matter, as discussed below. These tactics have led to a proliferation of conflicting numbers.

A proper analysis of shareholder losses can be made either under the FIFO model (First-In-First-Out) or under the *Dura* retained-shares model. FIFO methodology matches the first purchase in the class period with the first sale in the class period – the second with the second and so on – to determine losses or gains on each individual share traded during the class period. Shares held past the end of the class period are assigned the greater of either the actual sale price or a "sale value" which is the average closing price in that 90-day period. Under the *Dura* model, the losses on the retained shares are calculated according to the following formula: if a share was not sold within 90 days subsequent to the class period, the loss is to be measured using an average of the daily closing price of the Company's stock during the 90-day period beginning on the first day after the end of the class period. If a share was sold within 90 days subsequent to the class period, the loss is to be measured using the higher of the actual sale price or an average of the daily closing price from the

---

[1] On December 8, 2008, the Franks Group withdrew its motion to be appointed Lead Plaintiff in this Action. *See In re Nvidia Corporation Securities Litigation*, 08-CV-4260-JW, Dckt No. 70, Dec. 8, 2008.

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

1

end of the class period to the date of sale. *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633 at *14 (N.D. Cal. Aug. 22, 2008). Only shares retained – and not sold – past the end of the class period are considered to have suffered a cognizable loss. A complete picture, properly calculated under these methods, of Mr. Cohen's loss profile is as follows:

| Movant | Shares Purchased During the Class Period | Net Shares Purchased During the Class Period | Net Funds Expended During the Class Period | FIFO Losses | *Dura* Losses |
|---|---|---|---|---|---|
| **Roberto Cohen** | 108,500 | 15,480 | $512,176.00 | $324,811.40 | $250,019.20 |

Mr. Cohen has the greatest financial interest in the litigation according to the net funds expended metric, the FIFO metric, and the *Dura* metric. He purchased more shares during the Class Period than the City of Pontiac General Employees' Retirement System ("CPGR"), IBEW Local 640/Arizona Chapter NECA Pension Fund ("IBEW"), the New Jersey Carpenters Pension and Annuity Funds ("NJCP/NJCA"), or Mr. Kazanchian; he purchased more shares net during the Class Period than CPGR or IBEW.

Other lead plaintiff movants erroneously calculate or misrepresent Mr. Cohen's losses. For example, CPGR claims that Mr. Cohen is both a "short seller" (CPGR Opp. at 10) and a "net seller." *Id.* at 11, n14. Both attacks are demonstrably false. First, CPGR claims that Mr. Cohen's sale of 8,000 shares on December 21, 2007 evidences that Mr. Cohen is a short seller or that he omitted relevant information from his certification and concludes that, as a result, Mr. Cohen's losses are just $30,281.80. *Id.* In truth, Mr. Cohen had a pre-Class Period purchase (occurring in October 2007) that accounts for the 8,000 shares which he sold during the Class Period for proceeds of $228,800. The purchase of 8,000 shares was not included in Mr. Cohen's loss chart in accordance with the First-in-First-Out matched-trades analysis (*i.e.*, the pre-Class Period purchase of 8,000 shares are matched to the Class Period sale of 8,000 shares), and was properly excluded from his certification as it was not a transaction that occurred during the Class Period.

CPGR also claims that Mr. Cohen is a "net seller" for having sold more shares than he

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

2

1   purchased. CPGR Oppn. at 11 n.14. CPGR arrives at this conclusion only by erroneously including
2   the 8,000 shares sold on December 21, 2007. As detailed in Mr. Cohen's certification and loss chart,
3   Miller Decl. at Ex. A, Mr. Cohen purchased 108,500 shares during the Class Period; sold 93,020
4   shares during the Class Period; sold 15,400 shares after the end of the Class Period; and retained 80
5   shares. Mr. Cohen was a net purchaser during the Class Period, with net shares of 15,480 purchased.

Mr. Kazanchian – the movant with the smallest losses – resorts to arguing that because he made his purchases towards the end of the Class Period, scienter is somehow more readily proved (without regard to the facts of the case and the further investigation and discovery to come) and Mr. Kazanchian will likely be included in the class even if the Class Period is shortened. Kazanchian Opp. at 2. The PSLRA provides the mechanism for determining the lead plaintiff and that statute mandates that the movant with the largest financial interest in the litigation who is adequate be selected. 15 U.S.C. § 78u-4(a)(3)(B). The factual "what ifs" raised by Mr. Kazanchian are irrelevant to this analysis and certainly do not constitute "proof" (15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)), as required to rebut the presumption in favor of Mr. Cohen. Further, casting aside the best interests of the Class as a whole, Mr. Kazanchian suggests the Class Period definition as set forth in all of the three initial complaints may be vulnerable. Disputes regarding the length and proper ending date of a class period involve the type of factual and legal issues that are reserved for the trier of fact. *See, e.g., Miller v. Dyadic Int'l, Inc.* 2008 U.S. Dist. LEXIS 32271, at *11 (S.D. Fl. April 18, 2008) (Finding that the rule that chooses the most inclusive class period at this early stage in the litigation is the better rule of law.) *citing In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006).

The Krishnamurthy Group (now referring to itself as the Depies Group after previously having no name at all)[2] attempts to attack Mr. Cohen's losses under *Dura* by improperly trying to

---

[2] It is unclear why the group has chosen this name, as Depies is neither the largest member of the group (Krishnamurthy) nor the first alphabetically (Chow). Nevertheless, as Mr. Krishnamurthy is the largest movant in the group, Mr. Cohen will continue to refer to the group as the Krishnamurthy Group for consistency with his prior submission.

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

3

1 aggregate or merge Mr. Cohen's two separate accounts prior to performing *Dura* calculations on the
2 combined shares. Depies Opp at 3, n 2. There is no basis under accepted accounting standards and
3 practices to purport to combine separate accounts in this way. The Krishamurthy Group has simply
4 attempted to devise any method (however fundamentally flawed) to artificially deflate the actual
5 losses properly calculated by Mr. Cohen's counsel in accordance with the PSLRA. The fatally
6 flawed calculation artificially deflates Mr. Cohen's *Dura* losses because it improperly mismatches
7 purchases and sales from separate and distinctly managed accounts rendering the *Dura* retained
8 shares loss calculation wrong. Standard loss calculation accounting requires that accounts be kept
9 separate; purchases from one account cannot be matched to sales from another account – any such
10 "losses" or "gains" are not legitimate, nor reflected by the accounts' actual transactions. Properly
11 calculated, Mr. Cohen has the greatest losses under *Dura* (see Cohen Opp. at 6). These
12 characterizations also apply to losses calculated under FIFO; whichever analysis is preferred by the
13 Court, the Krishnamurthy Group's calculations are incorrect.

14 As Mr. Cohen has the greatest financial interest according to three of the five metrics shown
15 in the chart above, and as no movant has successfully rebutted the Mr. Cohen's adequacy, Mr.
16 Cohen should be appointed as Lead Plaintiff in this litigation.

### B. Mr. Cohen Otherwise Meets the Requirements of Rule 23

#### 1. Mr. Cohen Is Adequate and Typical

19 As discussed herein, Mr. Cohen is both typical and adequate, thereby meeting the
20 requirements of Fed. R. Civ. P. 23 as mandated by 15 U.S.C. § 78u-4(a)(3)(B). Mr. Cohen, just like
21 the other members of the Class, purchased NVIDIA securities during the Class Period when the
22 stock prices were artificially inflated as a result of the Defendants' fraudulent misrepresentations and
23 omissions. Mr. Cohen and the Class Members suffered damages as a result of these purchases. Mr.
24 Cohen has no interests antagonistic to those of the Class, has no conflicts of interest with the Class,
25 has a significant, compelling interest in prosecuting this action to a successful conclusion based on
26 his financial interest in the litigation, has selected adequate Class Counsel, and is himself adequate to
27 represent the Class.

28 LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

4

Mr. Cohen purchased all of his shares on the NASDAQ (*see* Cohen Decl. ¶ 1 (previously submitted), he speaks fluent English and is willing to travel to the United States for deposition and trial (*id*. at ¶ 1), and he has clearly shown his ability to work closely with his chosen counsel to manage the litigation. (*id*. at ¶¶ 1, 5). Furthermore, while Mr. Cohen is an Italian citizen living in Italy, Italy is likely to accept a judgment of the United States courts as binding, thereby eliminating any *res judicata* concerns. *See* Declaration of Gunther Handl submitted herewith. ¶¶ 3-7.

NJCP/NJCA effectively concedes Mr. Cohen's adequacy in failing to contest it. Several other movants do attempt to attack the adequacy of Mr. Cohen but they all fail to rebut the presumption in favor of Mr. Cohen.

CPGR attempts to attacks Mr. Cohen for his counsel's press release regarding the litigation, characterizing it as "duplicative advertising." CPGR Opp at 12. The PSLRA requires the plaintiff in the first filed action to issue a notice. 15 U.S.C. § 78u-4(a)(3)(A)(ii). The purpose of such notice is to notify purported class members of the pendency of the action and its claims, 15 U.S.C. § 78u-4(a)(3)(A)(i), as well as to notify "**any member of the purported class,**" that he or she "may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i)-(ii). While the PSLRA clarifies that only plaintiffs in the first filed action are *required* to publish such notice, the statute places no restrictions on the filing of such notice by other attorneys thereafter.[3] In an attempt to deny Mr. Cohen his right to select counsel provided to him under the PSLRA, CPGR mischaracterizes KGS' press release regarding the commencement of the action, *see* 15 U.S.C. § 78u-4(a), as "advertising." Such arguments have routinely been rejected as bases to rebut the adequacy of a lead plaintiff or its choice of counsel. *See, e.g., In re Optionable Sec. Litig.*, 07 Civ. 3753 (LAK) (S.D.N.Y. November 20, 2007) (Presumptive lead plaintiff KLD Investment Management, Inc. appointed lead plaintiff and its choice of lead counsel KGS ratified by Judge Lewis Kaplan despite similar arguments from competing movant concerning the propriety of press

---

[3] It is ironic that CPGR should argue here that the filing of press releases subsequent to the first notice is inappropriate, as counsel for CPGR filed a "duplicative" notice in *Lorenzato v. SunOpta et al*, SDNY 1:08-cv-01844, earlier this year.

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

5

1  releases).

2  Furthermore, KGS' press release was factually accurate and designed to provide investors
3  with information statutorily required to be disseminated, *see* 15 U.S.C. § 78u-4(a)(3)(A), and a
4  choice of counsel to represent them.[4] Inexplicably, CPGR cites to *Ravens v. Iftikar*, 174 F.R.D. 651,
5  659 (N.D. Cal. 1997), for the proposition that the press release issued by KGS was somehow
6  improper. This is baffling, as nowhere does the *Ravens* court criticize the firms in that case for
7  issuing press releases after an initial complaint had been filed and notice issued. Rather, the court
8  found that all forms of notice given in that case, both the initial publication and the subsequent press
9  releases, failed utterly to be informative to the Class of the claims made. By contrast, here the press
10 release by KGS informed potential Class Members of the filing, location of filing, dates of the Class
11 Period, nature of the claims, and deadlines for moving for appointment as lead plaintiff. It was
12 precisely the kind of press release envisioned by the *Ravens* court to inform class members of their
13 rights. CPGR also cites an unpublished decision in the District of Arizona (*Tsirekidze v. Syntax–*
14 *Brillian Corp.*, CV-07-2204-PHX-FJM, Order Consolidating and Appointing Lead Plaintiff and
15 Lead Counsel (April 4, 2008)), and truncates the relevant material such that it appears to condemn
16 KGS for a similar press release. In fact, the court declined to opine about the ethical implications of
17 multiple press releases, and indicated that the group in question would not be appointed lead plaintiff
18 because of deficiencies in its formation, and not because press releases issued by its counsel
19 rendered the group inadequate. See *id*. at 7-8. This *ad hominem* attack by CPGR against Mr. Cohen's
20 chosen counsel should not be condoned and has no bearing on Mr. Cohen's adequacy to represent
21 the Class in this litigation.

22 Movant IBEW fabricates a baseless attack against Mr. Cohen by attempting to
23 mischaracterize him as a day trader, lumping him in with such movants as George Franks and
24 Andriani Lazos of the now-withdrawn Franks Group. IBEW Opp. at 1, 10. Mr. Cohen is not a day

---

[4] Indeed, the press release issued by KGS specifically states that KGS had not yet filed suit, and urged investors to carefully evaluate any firm they would consider to represent them in this litigation.

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

6

1 trader: indeed, over a 237-day Class Period, Mr. Cohen made just 17 purchases and 17 sales.
2 Ironically, over that same period, IBEW made 16 purchases and 22 sales – exceeding the number of
3 trades by Mr. Cohen.

4 IBEW also attempts to claim a non-existent institutional preference. IBEW Opp. at 1, 7. As
5 discussed in the Cohen Opposition, this ignores the plain language of the PSLRA which calls for the
6 appointment of an adequate "person or group of persons" with the largest losses as lead plaintiff. 15
7 U.S.C. § 78u-4(a)(3)(B)(iii).

8 IBEW also claims that Mr. Cohen has made no showing and provided no information
9 regarding his abilities to manage this litigation. To the contrary, Mr. Cohen has provided both a
10 certification (indeed, all that is necessary for an individual movant) as well as a declaration detailing
11 his experience, understanding of his duties and responsibilities as Lead Plaintiff, and ability to
12 manage the litigation and work with his chosen counsel to pursue the claims of the Class.

13 Accordingly, Mr. Cohen is the presumptive Lead Plaintiff. Opposing movants fail to rebut
14 the presumption with "proof" of Mr. Cohen's inadequacy. Mr. Cohen should be appointed Lead
15 Plaintiff and his selection of KGS as Lead Counsel should be approved.

## II. The Competing Movants Are Inadequate

### A. The New Jersey Carpenters Funds Are Not the Presumptive Lead Plaintiff and Have Not Rebutted the Presumption in Favor of Mr. Cohen

19 NJCP/NJCA are not the presumptive lead plaintiff and have not rebutted the presumption in
20 favor of Mr. Cohen. NJCP/NJCA joint losses ($224,356) are significantly smaller than the losses of
21 Mr. Cohen, and their failure to submit a complete and accurate certification regarding NJCP/NJCA's
22 involvement in other securities litigations renders them inadequate to represent the Class. *See, e.g.,*
23 *In re Vonage IPO Sec. Litig.*, Civil No. 07-177-FLW, 2007 U.S. Dist. LEXIS 66258, *27-*28, *30
24 & n.8 (D.N.J. Sept. 6, 2008) (holding proposed lead plaintiff inadequate due to misinformation in
25 certification).

26 Accompanying the NJCP/NJCA initial motion for appointment as lead plaintiff was a
27 certification purporting to set forth the securities class action law suits in which the NJCP/NJCA had

28 LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

7

sought to serve and/or served as lead plaintiff in the last three years. The certification did not indicate in which of those eleven listed cases they had actually been appointed as lead plaintiff. *See generally* NJCP/NJCA Cert. Furthermore, the list did not include at least one other case in which NJCP/NJCA sought appointment as lead plaintiff: *In re Diebold Sec. Litig.*, No. 05-2873, 2006 WL 3023033, at *1 (N.D. Ohio, October 23, 2006).

NJCP/NJCA have effectively conceded that they do not have the largest losses of any movant for lead plaintiff in this litigation. In their opposition papers, NJCP/NJCA include a chart purporting to set forth purchase and FIFO loss data for each movant.[5] Interestingly, they choose to combine the losses of their two separate funds into a grand total but fail to do the same with respect to the two accounts of Mr. Cohen, a single individual investor whose losses in all accounts are attributable to him.[6] By NJCP/NJCA's own calculation, Mr. Cohen's losses are greater than their two accounts' losses combined, and the greatest losses of *any* movant in this litigation. By NJCP/NJCA's calculations, had all movants been treated as cognizable units, the totals would have been as follows, by order of loss incurred:

| Movant | Shares Purchased During Class Period | Net Shares Purchased During Class Period | Net Funds Expended During Class Period | FIFO Loss |
|---|---|---|---|---|
| **Roberto Cohen** | 108,500 | 15,480 | $512,176.00 | $324,824.21 |
| **CPGR** | 29,151 | 4,951 | $369,352.78 | $309,396.17 |
| **Improper Krishnamurthy Group** | 290,383 | 20,968 | $485,136.21 | $293,701.90 |

---

[5] While Mr. Cohen will be happy to accept NJCP/NJCA's calculation of his losses, NJCP/NJCA incorrectly assigns the 90-day holding value of $11.63 to sales made immediately after the end of the Class Period. Under FIFO, therefore, Mr. Cohen's losses are $324,811.40, and not $324,824.21 as NJCP/NJCA state in their chart.

[6] As discussed above, calculations of losses per account are made separately to prevent conflation of unrelated share purchases and sales. However, once the losses of each account are calculated, these *losses* are combined to calculate the total loss of the movant. Here, NJCP/NJCA properly calculated the accounts separately but then declined to add multiple-account losses for any movant except themselves.

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

8

| | | | | |
|---|---|---|---|---|
| **IBEW** | 21,795 | 8,741 | $252,239.56 | $257,887.06 |
| **NJCP/NJCA** | 24,600 | 20,900 | $467,782.58 | $224,356.48 |
| **Kazanchian** | 17,900 | 17,900 | $364,223.00 | $161,746.00 |

NJCP/NJCA concedes by their own calculations that Mr. Cohen has the largest losses of any movant for lead plaintiff in this litigation. The PLSRA does not specify how courts should determine which class member has the "largest financial interest." While some courts have concluded that an analysis of "largest financial interest" in a litigation involves a comparison of other metrics of interest as well as calculated losses (*See, e.g.*, *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997)), that approach is not unanimously taken by all courts. Indeed, a recent decision in this District specifically adopts the *Dura* methodology in calculating greatest financial interest. *Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633 at *10 (When calculating the greatest financial interest, the court adopts the retained share methodology.) The *Verifone* court found that financial interest was to be calculated by considering "shares bought during the class period that are retained at the end of the class period." *Id*. The court then calculated purchase price using the FIFO methodology, which has also been applied in the instant case. Sale price was calculated using the standard *Dura* formula (*supra*, p.1). *Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633 at *14. Under this formula, Mr. Cohen has the greatest financial interest in this litigation.

### B. The Krishnamurthy Group Is Not the Presumptive Lead Plaintiff and Has Not Rebutted the Presumption in Favor of Mr. Cohen

The Krishnamurthy Group is not the presumptive lead plaintiff and has not rebutted the presumption in favor of Mr. Cohen. See Cohen Opp. at 17. In addition, the Krishnamurthy Group's overall calculated *Dura* loss suffers from a fatal defect that renders their numbers materially wrong. The Krishnamurthy Group's *Dura* calculations for their largest investor, Kumaraswamy Krishnamurthy, show that he sustained a total *Dura* loss of $45,810.55. Based on Mr. Cohen's counsel's calculations, however, in the investment account, Mr. Krishnamurthy only had a $34,258.81 *Dura* loss because only 5,088 of the 267,233 sold shares were held after the Class

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

9

Period. In the IRA account, only 1,380 shares were held after the Class Period, for a calculated *Dura* loss of $21,352.49. Thus, Mr. Krishnamurthy suffered a total *Dura* loss of only $55,611.30, not $127,821.02, as they now claim in their opposition. Furthermore, the Krishnamurthy Group's lack of understanding of accounting methodology is further illustrated by their attempt to combine Mr. Cohen's two accounts into one (including combining Mr. Krishnamurthy's investment and IRA accounts), something which IBEW also does, but this is a fundamentally flawed accounting approach, as noted above.

### C. IBEW Is Not the Presumptive Lead Plaintiff and Has Not Rebutted the Presumption in Favor of Mr. Cohen

In the face of its comparatively smaller losses and no viable manner to rebut the presumption in favor of Mr. Cohen, IBEW resorts to arguing that the "court should give added weight to investor status." IBEW Opp. at 7. Such a preference does not exist, as discussed in Mr. Cohen's opposition at 22. Nowhere in the language of the PSLRA, or its legislative history, did Congress require that the lead plaintiff be an institution, as opposed to an individual, investor. 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Mohanty v. Bigband Networks, Inc.*, 2008 U.S. Dist. LEXIS 32764, 17-18 (N.D. Cal. Feb. 13, 2008) ("…a plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead plaintiff than an individual investor with a larger financial interest."); *In re Gemstar-TV Guide Int'l, Inc. Secs. Litig.,* 209 F.R.D. 447, 454 (C.D. Cal. 2002) ("[t]his court does not hold that institutional investors are presumptively the most adequate lead plaintiff solely by virtue of their status as institutional investors."); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265, 2004 U.S. Dist. LEXIS 10200, at *7 (E.D. Pa. June 3, 2004) ("the language of the [PSLRA] does not require that institutional investors take precedence over individual plaintiffs who are otherwise qualified to serve in a lead capacity").

IBEW does not have the greatest financial interest in this litigation, has no preferred status, and has not rebutted the presumption that Mr. Cohen should be appointed Lead Plaintiff.

### D. CPGR Is Not the Presumptive Lead Plaintiff and Has Not Rebutted the Presumption in Favor of Mr. Cohen

CPGR is not the presumptive lead plaintiff and has not rebutted the presumption in favor of

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

10

1 Mr. Cohen. Furthermore, Couglin Stoia Gellar Rudman & Robbins, LLC ("Coughlin Stoia"), counsel for CPGR, are patently inadequate to litigate this Action. Couglin Stoia currently represent plaintiffs in a derivative action against the Company. *See* Second Supplemental Declaration of Kim E. Miller in Further Support of the Motion of Roberto Cohen to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Counsel ("2d Supp. Miller Decl."), Ex. A, Stipulation and Agreement of Settlement of Derivative Litigation, *In re Nvidia Corp. Derivative Litigation*, 4:06-cv-06110-SBA. While there is a stipulation of settlement in that action, until final approval is granted and potential appeals are exhausted, there is a current, material conflict.

Coughlin Stoia is quite literally seeking to be permitted to represent plaintiffs in a case *against Nvidia* in the present action while it simultaneously represents Nividia (derivatively) in a concurrent action. The State Bar of California Rules of Professional Conduct provide that "A member shall not, without the informed written consent of each client… [r]epresent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter." California Rule of Professional Conduct 3-310(C)(3). Courts in this Circuit have held that dual representation creates an actual conflict of interests. *See*, *e.g.*, *Snipper, Wainer & Markoff v. United States Trustee (In re Internet in a Mall,. Inc.*), 2000 U.S. App. LEXIS 8257 (9th Cir. Apr. 24, 2000) (Court agreed with bankruptcy court that an actual conflict of interests existed when counsel represented creditors and shareholders of a company and also sought to represent the company itself as bankruptcy counsel, and firm was disqualified from acting as bankruptcy counsel.); *In re Plaza Hotel Corp.*, 123 B.R. 466 (B.A.P. 9th Cir. 1990) ("Horner cannot fully advocate the positions of the owners/guarantors and at the same time protect the best interests of the debtor corporation. We agree with the bankruptcy court that Horner's dual representation is an actual conflict of interest…"). Because CPGR does not have the largest financial interest in this litigation, has not rebutted the presumption in favor of Mr. Cohen, and has chosen counsel who are inadequate to represent plaintiffs in this action, CPGR's motion to be appointed Lead Plaintiff should be denied.

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

11

### E. Kazanchian Is Not the Presumptive Lead Plaintiff and Has Not Rebutted the Presumption in Favor of Mr. Cohen

Mr. Kazanchian is not the presumptive lead plaintiff and has not rebutted the presumption in favor of Mr. Cohen. Mr. Kazanchian also raises auxiliary points that foreign purchasers are subject to such unique defenses as forum non conveniens, subject matter jurisdiction, and the ability to represent foreign class members. Kazanchian Opp. at 8. These are simply red herrings at this very early stage of the litigation. First of all, federal statute mandates that venue is appropriate in this District because the Company has its principal place of business in this District. 15 U.S.C. § 78aa; 28 U.S.C. §§ 1391(b) and (c). Second, subject matter jurisdiction is not an issue because the Company is an American corporation, doing business in the United States, and traded its stock on an American exchange. *See Schoenbaum v. Firstbrook*, 405 F.2d 200, 208 (2d Cir. 1968) (holding that subject matter jurisdiction exists over a securities violation when the transactions involve stock registered on a national securities exchange); *In re Royal Ahold N.V. Sec. and ERISA Litig.*, 219 F.R.D. 343, 351 (D. Md. 2003) ("[T]he court [] has jurisdiction over the claims of domestic investors, regardless of where they purchased the securities, and also over the claims of foreign investors who purchased Royal Ahold American Depositary Receipts [] on a domestic exchange, because both activities have significant effects in the United States."). Third, Mr. Cohen has attested to the fact that, among other things, he is ready, willing, and able to monitor this litigation, communication with counsel, provide input, respond to discovery (including sit for a deposition). And fourth, as discussed in the Declaration of Gunther Handl in Support of the Motion of Roberto Cohen to Be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Counsel, attached to the 2d Supp. Miller Decl. at Exhibit B, "changes in the Italian legal system render any concern regarding an Italian court's recognition of a U.S. court's class action judgment unfounded, not just simply speculative." Handl Decl. ¶ 3. Accordingly, Mr. Kazanchian's attacks regarding foreign purchasers do not apply to Mr. Cohen, and would therefore not rebut the presumption in favor of Mr. Cohen for appointment as Lead Plaintiff in this litigation.

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

12

# **CONCLUSION**

For all of the foregoing reasons, Mr. Cohen respectfully requests that this Court: (1) appoint Mr. Cohen to serve as Lead Plaintiff in this action; (2) approve Mr. Cohen's selection of KGS as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

DATED: December 8, 2008              KAHN GAUTHIER SWICK, LLC

                                                ___/s/ Kim E. Miller____
Kim E. Miller (SBN 178370)
12 E. 41st St., Ste. 1200
New York, New York 10017
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
E-mail: kim.miller@kgscounsel.com

And

Lewis S. Kahn
KAHN GAUTHIER SWICK, LLC
650 Poydras Street, Ste. 2150
New Orleans, LA 70130
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
E-mail: lewis.kahn@kgscounsel.com

*Counsel for Mr. Cohen and Proposed Lead Counsel for the Class*

Michael F. Ram (SBN 104805)
E-mail: mfr@lrolaw.com
Karl Olson (SBN 104760)
E-mail: ko@lrolaw.com
LEVY, RAM & OLSON
639 Front Street, Fourth Floor
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

*Counsel for Mr. Cohen and Proposed Liaison Counsel for the Class*

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

13

**CERTIFICATE OF SERVICE**

I hereby certify that this Memorandum was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on December 8, 2008.

                /s/ Kim E. Miller\_\_\_\_\_
             Kim E. Miller

LEAD PLAINTIFF MOVANT ROBERTO COHEN'S REPLY
IN FURTHER SUPPORT OF MOTION OF ROBERTO COHEN
TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE
PROPOSED LEAD PLAINTIFF'S SELECTION OF COUNSEL
08-CV-4260-JW

14