MICHAEL D. TORPEY (SBN 79424)
*Email: mtorpey@orrick.com*
JAMES N. KRAMER (SBN 154709)
*Email: jkramer@orrick.com*
JUSTIN M. LICHTERMAN (SBN 225734)
*Email: jlichterman@orrick.com*
JAMES E. THOMPSON (SBN 240979)
*Email: jthompson@orrick.com*
CHRISTINE M. LOUIE (SBN 267929)
*Email: clouie@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:     (415) 773-5700
Facsimile:      (415) 773-5759

Attorneys for Defendants
NVIDIA CORPORATION and JEN-HSUN HUANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re NVIDIA CORPORATION SECURITIES LITIGATION, | Case No.  08-cv-04260-RS |
| | CLASS ACTION |
| This Document Relates To: ALL ACTIONS. | **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| | Date:          July 28, 2011<br>Time:          1:30 p.m.<br>Judge:        Honorable Richard Seeborg<br>Courtroom:  3, 17th Floor |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................. 1

II.     MATRIXX COMPELS DISMISSAL OF THE SCAC ...................................... 3

III.    ITEM 303 ALLEGATIONS DO NOT PLEAD A § 10(B) CLAIM ................ 4

IV.     THE OPPOSITION FAILS TO SHOW THAT ANY STATEMENT WAS FALSE
        WHEN MADE ..................................................................................................... 6

        A.    Mr. Hodge Indisputably Corroborates the Timing And Content Of
              NVIDIA's Disclosures And Contradicts Plaintiffs' Theories Of Falsity ............. 6

        B.    CW1 Is Unreliable And Inconsistent With Mr. Hodge ........................................... 8

        C.    The Opposition Does Not Rehabilitate The Other Unreliable Witnesses ............... 8

              1.    Mr. Demerjian Lacks Personal Knowledge And Relies On Hearsay
                    Statements Of Insufficiently Described Secret Sources ............................... 9

              2.    Mr. Rigg Admittedly Lacks Personal Knowledge ..................................... 10

              3.    The Remaining CWs Are Unreliable ......................................................... 10

        D.    The BIOS Updates Corroborate The Timing Of NVIDIA's Disclosures
              And Confirm That The Root Cause Of The Chip Failures Was Unknown ......... 11

        E.    Plaintiffs' Arguments About Other Lawsuits, Hindsight Articles, And
              Mr. Hara's Statements Do Not Demonstrate Falsity ........................................... 12

              1.    The Ancillary Insurance And Consumer Lawsuits Do Not Show
                    Falsity ....................................................................................................... 12

              2.    The After-The-Fact News Articles Do Not Show Falsity ......................... 13

              3.    Mr. Hara's Statements Do Not Establish Falsity ..................................... 13

V.      THE OPPOSITION CANNOT OVERCOME THE NON-ACTIONABLE
        NATURE OF THE CHALLENGED STATEMENTS ..................................... 13

        A.    Vague Statements Such As Those Challenged by Plaintiffs Are Routinely
              Deemed Non-Actionable Puffery .......................................................................... 14

        B.    The Opposition Cannot Remedy That the Challenged Forward-Looking
              Statements Are Non-Actionable ........................................................................... 15

        C.    The Opposition Confirms that NVIDIA's Accurate Historical Statements
              of Fact Are Non-Actionable .................................................................................. 15

        D.    NVIDIA's Risk Factors Are Non-Actionable ....................................................... 16

**TABLE OF CONTENTS**

Page

VI.    THE OPPOSITION HIGHLIGHTS PLAINTIFFS' FAILURE TO PLEAD A
       COGENT AND COMPELLING INFERENCE OF SCIENTER ..................................... 17

       A.    The Facts Negate Any Potential Inference Of Mr. Huang's Scienter.................. 17

       B.    The Opposition Fails To Set Forth Any Theory of Scienter For NVIDIA .......... 18

VII.   PLAINTIFFS CANNOT PLEAD LOSS CAUSATION ................................................... 19

VIII.  PLAINTIFFS CANNOT PLEAD A SECTION 20(A) VIOLATION.............................. 20

IX.    CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alaska Elec. Pension Fund v. Adecco S.A.*,
  434 F. Supp. 2d 815 (S.D. Cal. 2006),
  *aff'd*, 256 F. App'x 74 (9th Cir. 2007) ................................................................ 4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................ 1, 6, 20

*Belodoff v. Netlist, Inc.*,
  2009 WL 1293690 (C.D. Cal. Apr. 17, 2009) ................................................................ 16

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) ................................................................ 12, 14

*Freudenberg v. E*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010) ................................................................ 18

*Glazer Capital Mgmt., L.P. v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ................................................................ 19

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999) ................................................................ 12

*Harris v. IVAX*,
  182 F.3d 799 (11th Cir. 1999) ................................................................ 15

*Helwig v. Vencor, Inc.*,
  251 F.3d 540 (6th Cir. 2001) ................................................................ 12

*Huddleston v. Herman & Maclean*,
  640 F.2d 534 (5th Cir. 1981) ................................................................ 16

*Hudspeth v. C.I.R.*,
  914 F.2d 1207 (9th Cir. 1990) ................................................................ 12

*In re Accuracy, Inc. Sec. Litig.*,
  2010 WL 3447588 (N.D. Cal. Aug. 31, 2010) ................................................................ 9, 10

*In re Apple Computer Sec. Litig.*,
  886 F.2d 1109 (9th Cir. 1989) ................................................................ 16

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  2011 WL 1585605 (S.D. Fl. April 25, 2011) ................................................................ 20

i

1

**TABLE OF AUTHORITIES**

**Page(s)**

2

3

*In re Caere Corp. Sec. Litig.*,

4

   837 F. Supp 1054 (N.D. Cal. 1993) .................................................................... 4, 15

5

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,

   355 F. Supp. 2d 1069 (N.D. Cal. 2005) .................................................................. 14

6

7

*In re Cutera Sec. Litig.*,

   610 F.3d 1103 (9th Cir. 2010)................................................................................. 15

8

*In re LDK Solar Sec. Litig.*,

9

   584 F. Supp. 2d 1230 (N.D. Cal. 2008) ................................................................... 9

10

*In re Leapfrog Enter., Inc. Sec. Litig.*,

   527 F. Supp. 2d 1033 (N.D. Cal. 2007) .................................................................. 16

11

12

*In re Ligand Pharm., Inc. Sec. Litig.*,

   2005 WL 2461151 (S.D. Cal. Sept. 27, 2005) ....................................................... 13

13

*In re Maxim Integrated Prod., Inc. Sec. Litig.*,

   639 F. Supp. 2d 1038 (N.D. Cal. 2009) .................................................................. 19

14

15

*In re Oracle Corp. Sec. Litig.*,

   627 F.3d 376 (9th Cir. 2010).................................................................................. 14

16

*In re Pac. Gateway Exch., Inc. Sec. Litig.*,

17

   2002 WL 851066 (N.D. Cal. Apr. 30, 2002),

   *aff'd*, 73 F. App'x 250 (9th Cir. 2003)..................................................................... 5

18

19

*In re Petsmart, Inc. Sec. Litig.*,

   61 F. Supp. 2d 982 (D. Ariz. 1999)......................................................................... 5

20

*In re RasterOps Corp. Sec. Litig.*,

21

   1993 WL 476661 (N.D. Cal. Aug. 13, 1993).................................................... 15, 16

22

*In re Scholastic Corp. Sec. Litig.*,

   252 F.3d 63 (2d Cir. 2001)...................................................................................... 5

23

*In re Silicon Graphics, Inc. Sec. Litig.*,

24

   183 F.3d 970 (9th Cir. 1999).................................................................................. 17

25

*In re Silicon Storage Tech., Inc., Sec. Litig.*,

   2007 WL 760535 (N.D. Cal. Mar. 9, 2007)............................................................. 9

26

27

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,

   160 F. Supp. 2d 1059 (N.D. Cal. 2001) ................................................................. 15

28

# TABLE OF AUTHORITIES

**Page(s)**

*In re Textainer P'ship Sec. Litig.*,
  2006 WL 1328851 (N.D. Cal. May 15, 2006) ........................................................... 9

*In re UTStarcom, Inc. Sec. Litig.*,
  617 F. Supp. 2d. 964 (N.D. Cal. 2009) ........................................................... 14, 15

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ........................................................... 20

*In re Verifone Sec. Litig.*,
  11 F.3d 865 (9th Cir. 1993) ........................................................... 4

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp. Inc.*,
  537 F.3d 527 (5th Cir. 2008) ........................................................... 8

*Karpov v. Insight Enters., Inc.*,
  2010 WL 4867634  (D. Ariz. Nov. 16, 2010) ........................................................... 4, 17

*Lifschitz v. NextWave Wireless Inc.*,
  2011 WL 940918  (S.D. Cal. Mar. 16, 2011) ........................................................... 8

*Matrixx Initiatives v. Siracusano*,
  563 U.S. __, 131 S. Ct. 1309 (Mar. 22, 2011) ........................................................... *passim*

*Petrie v. Elec. Game Card Inc.*,
  2011 WL 165402 (C.D. Cal. Jan. 12, 2011) ........................................................... 19

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ........................................................... 14

*SEC v. Todd*,
  2007 WL 1574756 (S.D. Cal. May 30, 2007) ........................................................... 5

*SEC v. Vitesse Semiconductor Corp.*,
  2011 WL 976578 (S.D.N.Y. Mar. 21, 2011) ........................................................... 12

*Shurkin v. Golden State Vintners Inc.*,
  471 F. Supp. 2d 998 (N.D. Cal. 2006),
  *aff'd*, 303 F. App'x 431 (9th Cir. 2008) ........................................................... 9

*Simon v. American Power Conversion Corp.*,
  945 F. Supp. 416 (D.R.I. 1996) ........................................................... 5

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010) ........................................................... 4, 17

iii

1

**TABLE OF AUTHORITIES**

**Page(s)**

2

3

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008)...................................................................................... 18

4

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
    2011 WL 1253250 (D. Ariz. Mar. 31, 2011) ............................................................. 3

5

6

*Thesling v. Bioenvision*,
    374 F. App'x 141 (2d Cir. 2010)................................................................................. 5

7

8

*Weitschner v. Monterey Pasta Co.*,
    294 F. Supp. 2d 1102 (N.D. Cal. 2003) .................................................................. 4

9

*Wenger v. Lumisys, Inc.*,
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ...................................................................... 15

10

11

*Zeid v. Kimberley*,
    930 F. Supp. 431 (N.D. Cal. 1996) ......................................................................... 16

12

13

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)........................................................................... *passim*

14

15

**<u>STATUTES</u>**

16

15 U.S.C. Section 78(u)-4(b)(1)................................................................................... 14

17

15 U.S.C. Section 78(u)-5(c)(1)................................................................................... 15

18

19

20

21

22

23

24

25

26

27

28

iv

## I.     INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion to Dismiss (the "Opposition" or "Opp.") the Second Consolidated Amended Complaint ("SCAC") does not cure the numerous, independent deficiencies of the SCAC, each of which compels dismissal. It cites no facts alleged in the SCAC that establish: (1) any statement was false when made; (2) any of the complained of statements are actionable; (3) a cogent and compelling inference of scienter; or (4) loss causation. This Court already found each of these failures to be fatal flaws in Plaintiffs' previous pleading.

Instead, the Opposition relies on a combination of inapplicable legal authority and an attack on portions of the Hodge Declaration that contradict Plaintiffs' theory of fraud. Neither of these tactics save the SCAC. As explained below, Plaintiffs' reliance on *Matrixx* is misplaced as it actually confirms the propriety of NVIDIA's conduct. *See Matrixx Initiatives v. Siracusano*, 563 U.S. __, 131 S. Ct. 1309 (Mar. 22, 2011). *Matrixx* makes clear that NVIDIA had no duty to speak under Section 10(b) even assuming it possessed material information. *Id.* at *1321. Rather, *Matrixx* highlights that in cases like this, the most cogent and compelling inference is that the company delayed "releasing information [] in order to provide itself an opportunity to carefully review all evidence," not one of fraud. *Id.* at *1324 n.15. Plaintiffs put forward no plausible competing inference and quickly retreat to rare and inapplicable exceptions to the PSLRA's stringent pleading standard.

Plaintiffs' attack on the Hodge Declaration exposes the fundamental inconsistencies in their theory of fraud – and leaves no doubt that the defects of the SCAC cannot be cured. Having chosen to incorporate Mr. Hodge's testimony into the SCAC, Plaintiffs cannot now avoid the consequences of doing so or claim a right to discovery. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007) ("It is no answer to say that a claim … can, if groundless, be weeded out early in the discovery process.").

As to falsity, the Opposition, like the SCAC, shows only that NVIDIA knew before July 2008 that some of its chips had experienced failures. As Plaintiffs concede, NVIDIA regularly disclosed to investors both the fact of chip failures and their potential consequences. *See, e.g.*, RJN at 27 (Ex. 2), 90 (Ex. 3), 130 (Ex. 6), 229 (Ex. 13), 241-42 (Ex. 14), SCAC ¶¶ 134,

136.  Thus, to plead fraud, Plaintiffs must establish that NVIDIA was required to make <u>additional</u> disclosures and failed to do so.  Additional disclosures would be required only if NVIDIA was aware of its fault for and the scope of the problem before July 2008.  In a tacit admission that they have pled neither, Plaintiffs argue that such a showing is unnecessary.  They are wrong.  This Court expressly held that *both* are required.  *See* Order at 16 (Plaintiffs failed to plead falsity because they did not "sufficiently allege that NVIDIA knew its chips were the cause of the problem prior to the July 2008 disclosure or that it knew the cost of these defects would exceed the normal reserve.").

As set forth in Defendants' Motion to Dismiss ("Motion"), the allegations of the SCAC corroborate both the non-obvious nature of the chip problem and the timing of NVIDIA's disclosures.  For example, Mr. Hodge details the extensive, months-long investigation required to uncover the cause of the problem, which was only determined by "mid-2008."  Hodge ¶¶53, 55-56. Similarly, the OEMs would not have bothered with an ineffectual software remedy <u>during the class period</u> if they knew there was an inherent NVIDIA hardware defect.  SCAC ¶¶ 60-61.  The Opposition offers no response to these facts.  Given the non-obvious nature of the problem, the most cogent and compelling inference is that NVIDIA appropriately performed a pre-disclosure investigation to determine the cause and scope of the chip failures.  Since NVIDIA had already warned investors of failures and taken a corresponding reserve, no additional disclosure was required until that investigation yielded sufficient additional information in mid-2008.  At that time, NVIDIA made the appropriate disclosures.

As to scienter, the Opposition again whiffs, offering nothing to establish any cogent or compelling inference that Mr. Huang or NVIDIA acted with the requisite intent to deceive.  The Court has already determined that Mr. Huang's trading pattern (selling 2% of his shares during the class period) was neither suspicious nor unusual.  Plaintiffs' attempt to circumvent this finding by attacking the propriety of Mr. Huang's trading plan cannot change the result.  Similarly, the SCAC does not allege facts sufficient to invoke the core operations doctrine.  Nor does the Opposition offer any viable theory to establish NVIDIA's scienter.

1    Finally, the Opposition points to no facts refuting that NVIDIA's stock price drop

2 stemmed from its earnings miss and lowered guidance, and so still fails to plead loss causation.

3    **II.    MATRIXX COMPELS DISMISSAL OF THE SCAC**

4    The Opposition relies heavily on *Matrixx* to suggest that the Supreme Court watered-

5 down the PSLRA's stringent pleading standard.  It did not.  *Matrixx* merely reaffirmed long-

6 standing law on materiality, and left the PSLRA's exacting standards for pleading falsity and

7 scienter unaltered.[1]

8    In *Matrixx*, plaintiffs alleged that Matrixx's cold remedy, Zicam, caused patients to lose

9 their sense of smell.  Plaintiffs set forth significant evidence of a "reliable causal link" between

10 Zicam and loss of smell, including: (1) reports of medical professionals, (2) an American

11 Rhinologic Society presentation, (3) medical studies about Zicam's key ingredients, (4) several

12 product liability lawsuits against Matrixx, and (5) an FDA inquiry.  Matrixx tried to hide that

13 causal link by publicly denouncing reports of adverse events as "completely unfounded and

14 misleading" because "the safety and efficacy of [Zicam's key ingredients] … have been well

15 established," even though Matrixx had not performed any investigation into the link and had

16 knowledge of substantial evidence to the contrary.  *Matrixx*, 131 S. Ct. at *1323.

17    In evaluating the allegations, the Supreme Court declined to create a bright line "statistical

18 significance" rule for establishing materiality, reaffirming settled law on that point.  The Court

19 also reaffirmed the PSLRA's heightened pleading standards requiring a "strong inference of

20 scienter" that is "at least as cogent and compelling" as "plausible opposing inferences."  *Id.* at

21 *1324.  In so doing, it emphasized that "§10(b) and Rule 10b-5(b) do not create an affirmative

22 duty to disclose any and all material information," and therefore mere knowledge of adverse

23 event reports does not create a disclosure obligation.  *Id.* at *1321.  Rather, the Court found that

24 disclosure of the adverse event reports was necessary to obviate the "misleading nature of

25 Matrixx's press release," which suggested that it had performed studies refuting a link between

26 Zicam and loss of smell, when in fact it had not.  *Id.* at *1323.

27 _____

[1] *See Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 2011 WL 1253250 at *37 n.30 (D. Ariz.
28 Mar. 31, 2011) ("*Matrixx* has 'no bearing' on the primary issue herein – plaintiff's alleged failure to meet the
pleading standards for falsity under the PSLRA.").

**REPLY MEMO. ISO MOTION TO DISMISS SECOND
AMENDED COMPLAINT – CASE NO. 08-CV-04260-RS**

Although Plaintiffs assert that this case is like *Matrixx*, it is not.  There is no allegation that NVIDIA took affirmative steps to conceal the chip failures or issued materially false or misleading press releases during the class period.  To the contrary, NVIDIA plainly disclosed the existence and risk of chip failures and corresponding financial reserve.  Similarly, when HP asserted its claim, NVIDIA promptly disclosed it.  RJN at 142 (Ex. 6); Opp. at 39-40.

In fact, *Matrixx* encourages companies to do precisely what NVIDIA did here:  refrain from speaking until an adequate pre-disclosure investigation is performed.[2]  Contrary to Plaintiffs' contentions, *Matrixx* does not impose a duty to disclose every time there is a "mere *risk* that NVIDIA would lose its key OEMs, or that it *could be* at fault for" the underlying problem. Opp. at 11.  To do so would effectively require NVIDIA to disclose every chip problem upon the mere receipt of an adverse event report, before any investigation.  If anything, *Matrixx* cautions against that approach by chastising the *Matrixx* defendants for making affirmative statements about the problem before investigating it.  131 S. Ct. at *1323.

## III.     ITEM 303 ALLEGATIONS DO NOT PLEAD A § 10(B) CLAIM

As they did on the first motion to dismiss, Plaintiffs argue that NVIDIA's purported violation of Item 303 of Regulation S-K constitutes securities fraud.  Opp. at 11-15.  It does not. As the Court recognized in dismissing Plaintiffs' previous complaint, "it is well established that violation of an exchange rule will not support a Section 10(b) or Rule 10b-5 claim."  Order at 16.[3]

---

[2] Indeed, *Matrixx* recognizes that the most cogent inference is often (as it is here) that the company "delayed releasing information [] in order to provide itself an opportunity to carefully review all evidence."  131 S. Ct. at *1324 n.15; *see also Slayton v. Am. Express Co.*, 604 F.3d 758, 774 (2d Cir. 2010) ("[C]ommencement of an investigation and prompt disclosure of [a Company's] findings must be counted against any inference of fraudulent intent."); *Karpov v. Insight Enters., Inc.*, 2010 WL 4867634 at *9 (D. Ariz. Nov. 16, 2010) (conducting an investigation in response to discovery of a problem weighs against an inference of scienter).

[3] *Accord In re Caere Corp. Sec. Litig.*, 837 F. Supp 1054, 1061 n.4 (N.D. Cal. 1993) ("[t]he fact that Defendants may or may not have violated Item 303 is irrelevant to Plaintiffs' Rule 10b-5 claims.").  *See also In re Verifone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993) (Regulation S-K does not establish a duty to disclose under § 10(b)); *Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 828 (S.D. Cal. 2006), *aff'd*, 256 F. App'x 74 (9th Cir. 2007) ("standards for disclosure under section 10(b) differ from the standards for disclosure under [Item 303]"); *Weitschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1118 (N.D. Cal. 2003) ("[E]ven if Plaintiffs could demonstrate a breach of [Item 303], this would not assist in stating a cause of action under Section 10(b).").

1    Plaintiffs' reliance on cases from other jurisdictions (Opp. at 14-15) cannot overcome the

2    law in this Circuit.[4]  For example, in *Simon v. American Power Conversion Corp.,* – a Rhode

3    Island case – the Court explained that it was "not…creating a private right of action for a

4    violation of an SEC regulation."  945 F. Supp. 416, 431 n.20 (D.R.I. 1996).  Nor do the Second

5    Circuit's unpublished opinion in *Thesling v. Bioenvision*, 374 F. App'x 141 (2d Cir. 2010) or its

6    decision in *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) save the SCAC.  In

7    *Thesling*, the Court affirmed the dismissal of a § 10(b) claim because of the absence of a duty to

8    disclose; it did not even address Item 303.  374 F. App'x at 143 ("it is by now axiomatic that 'a

9    corporation is not required to disclose a fact merely because a reasonable investor would very

10   much like to know that fact.'") (citation omitted).  In *Scholastic Corp.*, the court merely mentions

11   Item 303 in passing; there is no analysis of the issue.  252. F.3d at 70.

12   Even putting aside this foundational flaw in Plaintiffs' theory of liability, Plaintiffs'

13   Item 303 theory fails because the SCAC does not allege a violation of Item 303.  Item 303

14   requires (1) disclosure of a "known trend" if it's likely to come to fruition, or (2) if that

15   determination cannot be made, disclosure is required if management can "evaluate objectively the

16   consequences of that trend … on the assumption that it will come to fruition."  Opp. at 12.  The

17   SCAC must therefore allege facts that establish NVIDIA understood the root cause of the

18   problem and so could recognize a "trend," or if unable, that it could quantify its consequences

19   (*i.e.*, its scope) assuming there was a trend.  The facts alleged show that NVIDIA could do

20   neither.

21   According to the SCAC, and the facts incorporated therein, only <u>some</u> configurations of

22   <u>some</u> computers sold by <u>some</u> OEMs and containing <u>some</u> models of NVIDIA chips were failing,

23

24   [4] In a footnote, the Opposition cherry-picks three cases that focus on Item 303's inapplicability to forward looking
     statements, and pretends that they represent the entire body of Ninth Circuit law concerning Item 303.  *See* Opp. at 15

25   n.7.  They do not.  The Ninth Circuit has consistently refused to find that an Item 303 violation equates to securities
     fraud, and courts uniformly interpret the cases cited by Plaintiffs to mean that Item 303 cannot serve as a basis for a

26   § 10(b) claim even outside the context of forward looking statements.  *See, e.g.*, *In re Petsmart, Inc. Sec. Litig.*, 61 F.
     Supp. 2d 982, 996-97 (D. Ariz. 1999) (rejecting Item 303 as support for a § 10(b) claim); *SEC v. Todd*, 2007 WL

27   1574756, at *6 (S.D. Cal. May 30, 2007) ("SEC Regulation S-K…cannot be imported as a surrogate for a straight
     materiality analysis under § 10(b) and Rule 10b-5."); *In re Pac. Gateway Exch., Inc. Sec. Litig.*, 2002 WL 851066, at

28   *13 (N.D. Cal. Apr. 30, 2002), *aff'd*, 73 F. App'x 250 (9th Cir. 2003) (finding no private right of action in a § 10(b)
     case based on an allegation of non-compliance with Regulation S-K).

while others containing <u>those same chips</u> and sold by the same OEMs did not.  SCAC ¶ 25; Hodge ¶ 36.  In addition, the chips at issue passed "industry standard" tests (Hodge ¶ 39) performed by <u>both</u> NVIDIA and HP both <u>before and after</u> they were incorporated into HP computers with "no failures" (Hodge ¶¶ 21-22; 40-41).  Thus, far from establishing the existence of a trend or the ability to quantify any consequence before "mid-2008," the SCAC paints a story of incertitude and inconclusiveness requiring further investigation.

## IV.    THE OPPOSITION FAILS TO SHOW THAT ANY STATEMENT WAS FALSE WHEN MADE

As NVIDIA pointed out in its moving papers, Mr. Hodge's declaration, which Plaintiffs incorporated into the SCAC, corroborates the timing and content of NVIDIA's disclosures. Plaintiffs do not – and cannot – refute this fact.  Instead, they posit a false dichotomy by mischaracterizing Mr. Hodge's testimony, then arguing that the parties' competing characterizations create factual disputes requiring discovery.  That misses the point.  Mr. Hodge's sworn testimony is incorporated into the SCAC and provides a plausible and logical, non-fraud explanation that corroborates NVIDIA's disclosures and undermines other allegations in the SCAC.  These inconsistencies, which are of Plaintiffs' own making, lay waste to any effort to plead a <u>plausible</u> theory of fraud.  *See Twombly*, 550 U.S. at 557 (allegations insufficient if they "stop[] short of the line between possibility and plausibility of 'entitle[ment] to relief'").

### A.    Mr. Hodge Indisputably Corroborates the Timing And Content Of NVIDIA's Disclosures And Contradicts Plaintiffs' Theories Of Falsity.

NVIDIA's Motion explained in detail how Mr. Hodge's testimony, which must be accepted as true, corroborates that NVIDIA appropriately tested its chips and the timing and content of its disclosures.  The Opposition never refutes this.

Mr. Hodge's testimony is clear:  HP "captured" motherboards from failed computers in October/November 2007 (¶48); then performed rigorous testing to determine the root cause of the problem from January 2008 to March 2008 with no failures (¶¶53, 55); and finally determined the root cause of the failures "by mid-2008" (¶56).  That chronology lines up perfectly with the timing and content of NVIDIA's May 2008 disclosure that HP had made an initial claim and

REPLY MEMO. ISO MOTION TO DISMISS SECOND
AMENDED COMPLAINT – CASE NO. 08-CV-04260-RS

1    subsequent July 2008 disclosure explaining and quantifying the problem. Mr. Hodge

2    corroborates the most plausible inference that neither NVIDIA nor its OEM customers

3    understood the nature, cause, or scope of the problem before mid-2008, at which time NVIDIA

4    made appropriate disclosures.[5]

5          In response, Plaintiffs accuse Defendants of mischaracterizing Mr. Hodge's testimony. A

6    simple review of Mr. Hodge's Declaration, however, confirms that Defendants fairly characterize

7    his testimony.

8          Plaintiffs also insinuate that Mr. Hodge's testimony is inaccurate by highlighting

9    purported "facts" contradicting him. Of course, the Court need not decide whether Mr. Hodge is

10   right or wrong. Rather, the fact that these internal contradictions exist undermine any plausible

11   theory of fraud.

12         For example, Plaintiffs' claim is premised on the theory that NVIDIA made a "hasty,

13   untested" change to the original design of the chip, yet the SCAC offers no supporting facts.

14   SCAC ¶ 27. By contrast, Mr. Hodge describes <u>NVIDIA's</u> "industry standard" testing before it

15   shipped chips to HP, <u>and HP's</u> separate and independent "industry standard" testing of computers

16   containing those chips, with "no problems, including any alleged heat-cycling defect." Hodge

17   ¶¶ 21-22 (HP tests) & 39-41 (NVIDIA tests). In the face of these fundamental internal

18   contradictions, Plaintiffs' allegations of fraud are utterly implausible.

19         Similarly, Plaintiffs assert – again with no factual support or citation to the SCAC – that

20   HP received back thousands of failed motherboards and replicated the bump crack problem in

21   early 2007. Opp. at 19. Mr. Hodge's sworn testimony flatly undermines this assertion. He

22   testifies that HP "captured" the motherboards in October-November 2007 (¶48), "<u>attempted</u> to

23   recreate the chip cracks" in January 2008, and that these tests "did not induce a single failure chip

24   crack." Hodge ¶¶ 53, 55. Once again, internal contradictions render Plaintiffs' fraud theory

25   unreliable and implausible, particularly when juxtaposed against the far more plausible inference

26   that NVIDIA and its customers did not understand the problem before "mid-2008." *Id*. at ¶56.

27

28

---

[5] It defies logic to suggest that NVIDIA could have understood the nature, cause, and scope of the problem before its OEMs did, and the SCAC offers no facts that establishing that it did.

**REPLY MEMO. ISO MOTION TO DISMISS SECOND
AMENDED COMPLAINT – CASE NO. 08-CV-04260-RS**

### B.   CW1 Is Unreliable And Inconsistent With Mr. Hodge.

In an attempt to salvage the SCAC, the Opposition harps on CW1's allegations.  It fails, however, to address any of CW1's shortcomings addressed at length in the Motion.  It does not dispute, for example, CW1's admission that s/he <u>did not</u> communicate with NVIDIA, and so has no personal knowledge of what NVIDIA was told or knew.  Mot. at 13; SCAC ¶ 38 (CW1 admits that his superiors, including Mr. Hodge, would have been the ones communicating with NVIDIA); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (witnesses must "have personal knowledge of the events they report.").  Nor does it reconcile CW1's assertion that HP had identified the thermal profile that caused the bump cracks and reproduced the problem by "early-2007" with Mr. Hodge's explicit declaration that HP only "hypothesized" about the cause in November 2007 and first "attempted" to reproduce the problem in "January 2008" without success.[6]  The fact that the SCAC is riddled with such self-defeating contradictions undermines the plausibility of Plaintiffs' theory and compels dismissal.

### C.   The Opposition Does Not Rehabilitate The Other Unreliable Witnesses.

Nor does the Opposition rehabilitate Plaintiffs' other unreliable witnesses, none of whom provide facts establishing that any NVIDIA statement was false or misleading when made.  At the outset, Plaintiffs argue that its CW statements should not be "discounted."  Opp. at 33 n.19.  However, under the PSLRA the Court must assess the quality of CW allegations.  *Zucco*, 552 F.3d at 995-1000.  As is the trend, "courts have also grown to regard [CW allegations] with a good amount of skepticism."  *Lifschitz v. NextWave Wireless Inc.*, 2011 WL 940918 at *2 (S.D. Cal. Mar. 16, 2011) (internal citations omitted); *see also Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp. Inc.*, 537 F.3d 527, 535 (5th Cir. 2008).  The CWs here epitomize why.

The Opposition does not dispute that (1) most of the CWs were never NVIDIA employees; (2) those who did work at NVIDIA were not employed during the class period; and (3) the CWs offer no more than generic and speculative conclusions untethered to any personal knowledge of NVIDIA's inner workings.  The Opposition tries to redeem them - without success

---

[6] CW1 concedes that Mr. Hodge is "highly credible," her boss, and was the one communicating with NVIDIA and so has personal knowledge where CW1 does not.  SCAC ¶¶ 38, 40.

REPLY MEMO. ISO MOTION TO DISMISS SECOND
AMENDED COMPLAINT – CASE NO. 08-CV-04260-RS

– by glossing over the stringent CW pleading standard and lauding quantity over quality.[7]  Yet it barely mentions most of the 17 CWs, and focuses chiefly on CW1, CW7, internet blogger Charlie Demerjian, and "expert," John Rigg.  Even for these witnesses, however, the Opposition fails to show, as it must, "that the witnesses in question have personal knowledge of the events they report."  *Zucco*, 552 F.3d at 995; *Shurkin v. Golden State Vintners Inc.*, 471 F. Supp. 2d 998, 1015 (N.D. Cal. 2006), *aff'd*, 303 F. App'x 431 (9th Cir. 2008).[8]  Absent such a showing, none of the allegations attributed to these witnesses establish that any statement was false when made.

### 1. Mr. Demerjian Lacks Personal Knowledge And Relies On Hearsay Statements Of Insufficiently Described Secret Sources.

The Opposition puts much stock in statements of Charlie Demerjian.  Although Plaintiffs characterize him as an "industry insider," no facts support that conclusion.  He is an internet blogger who claims to have spoken with secret, unidentified sources who supposedly told him things.  He supplies no information about his purported sources – no identities, job titles, dates of employment, or any basis for the Court to determine how and when these secret sources purportedly acquired the information they supposedly conveyed to him, including whether they had personal knowledge of the reported events.  *See* SCAC ¶ 43 (Demerjian "covered NVIDIA's chip defects and spoke to dozens of people about the problems"); Opp. at 21 (Demerjian spoke with unidentified "insiders").  He offers exactly the sort of hearsay, rumor, speculation, or opinion that the Ninth Circuit instructs must be disregarded.  *See Zucco*, 552 F.3d at 995-98 (hearsay statements demonstrate a witness's unreliability).  Plaintiffs cannot evade the CW pleading rules by laundering allegations through Demerjian.

---

[7] *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230 (N.D. Cal. 2008) does not support Plaintiffs' arguments.  In that case, the court relied on a disclosed witness's personal knowledge based on his employment at the company during the class period.  *Id.* at 1243 ("[u]nlike the anonymous informants in *In re Silicon Storage Technology*, Controller Situ worked at LDK for most of the class period.").

[8] *See also In re Accuray, Inc. Sec. Litig.*, 2010 WL 3447588, at *6 (N.D. Cal. Aug. 31, 2010) (CW allegations based on speculative opinion "cannot substitute for the specific facts necessary to plead falsity"); *In re Silicon Storage Tech., Inc., Sec. Litig.*, 2007 WL 760535, at *10-15, *30-32 (N.D. Cal. Mar. 9, 2007) (dismissing complaint where expert report relied on generalized information, not company-specific facts); *In re Textainer P'ship Sec. Litig.*, 2006 WL 1328851, at *5-6 (N.D. Cal. May 15, 2006) (citing standard for evaluating CWs when assessing whether allegations of expert met PSLRA pleading standards).

REPLY MEMO. ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT – CASE NO. 08-CV-04260-RS

Plaintiffs dispute none of these facts, or that Demerjian lacks qualifications or experience in chip design, engineering, testing, and manufacturing; did not work at NVIDIA or speak to <u>its</u> employees; lacks personal knowledge about what NVIDIA knew and when; that all of his statements (including published articles) were made in hindsight, <u>after</u> NVIDIA's July 2, 2008 disclosure; and that he is directly contradicted by facts pled and incorporated in the SCAC. *Compare, e.g.,* SCAC ¶ 43 *with* Hodge ¶¶ 50, 55. Demerjian is riddled with multiple layers of unreliability. His statements do not satisfy the PSLRA's exacting pleading requirements, and do not permit an inference of falsity or scienter. *See Accuracy Inc.*, 2010 WL 3447588, at *8.

## 2. Mr. Rigg Admittedly Lacks Personal Knowledge.

Mr. Rigg fares no better. Contrary to Plaintiffs' assertions, Rigg does not provide "explicit detail related to the problems defined in the Complaint." Opp. at 21. As even Plaintiffs are forced to concede, Rigg has no knowledge of the particular chip problem at issue here, and offers only generalized statements about graphics chips in a vacuum. His opinions are disconnected from anything NVIDIA did or knew, and so are too speculative to permit any inferences about NVIDIA's conduct or knowledge. *See, e.g.*, SCAC ¶¶ 48-49 (generic statements about chip design and how quickly NVIDIA should have been able to identify a chip failure).

## 3. The Remaining CWs Are Unreliable.

Plaintiffs fail to rehabilitate the remaining CWs. Their recitation of job titles for CWs 2[9] (Senior New Product Introduction Planner), 4 (software engineer), 6 (software engineer), and 8 (computer repair technician) cannot cure those CWs' lack of personal knowledge about the chip problem here. Opp. at 33-34 nn.20-21. For instance, Plaintiffs fail to explain how CW4, a <u>software</u> engineer, would know anything about <u>hardware</u> issues. The assumption that "CW4…developed driver code for graphics chips" and so had "exposure to and familiarity with hardware issues as related to graphics" is pure speculation. Opp. at 33 n.20.

---

[9] Plaintiffs' argue that "the level of detail that CW2 provides indicates much more about CW2's exposure to matters about the Company and its products," however, this merely underscores the problems with CW2. Opp. at 33. That CW2 gives more detail than someone in his/her position would ordinarily know is exactly why the basis for that knowledge must be pled. *See Zucco*, 552 F.3d at 999.

REPLY MEMO. ISO MOTION TO DISMISS SECOND
AMENDED COMPLAINT – CASE NO. 08-CV-04260-RS

Similarly, while CW7 is the only witness who makes allegations involving Dell, the Opposition offers no details about who at Dell communicated with NVIDIA, let alone when these purported communications occurred or what was said.  As a result, allegations purportedly gleaned from CW7 cannot establish that NVIDIA knew anything about Dell problems before 2008.[10]  Moreover, as NVIDIA pointed out in its moving papers, CW7's assertions create the highly implausible inference that Dell knowingly manufactured and sold computers containing problematic chips after purportedly uncovering the problem in its "prototypes."  Mot. at 17.  The SCAC offers no plausible inference to rebut this highly implausible one.

### D. The BIOS Updates Corroborate The Timing Of NVIDIA's Disclosures And Confirm That The Root Cause Of The Chip Failures Was Unknown.

Although Plaintiffs attempt to cloud the issue by arguing that NVIDIA wrote the BIOS update, the Opposition concedes that the OEMs issued the BIOS updates in December 2007 and February 2008 – after the start of the class period.  See Hodge ¶¶ 50-52 (HP issued BIOS in December 2007); SCAC ¶ 61 (Dell issued BIOS in February 2008).  Plaintiffs offer no explanation why the OEMs would issue an ineffectual software update if, as Plaintiffs say, they understood the root cause of the problem months, if not years, earlier.  They offer no reason why OEMs would join a scheme to hide chip problems, let alone facts suggesting they did.  See Order at 11 (dismissing CAC because Plaintiffs "alleged[d] no particular facts to suggest…that the OEMs issued the BIOS updates to buy NVIDIA time to replace the GPUs.").  The only plausible inference is that OEMs (and NVIDIA) did not know the root cause of the chip failures in December 2007 and February 2008 – well into the class period – and believed the BIOS updates would eliminate the problem – exactly as Mr. Hodge says.  See SCAC ¶¶ 60-61; Hodge ¶ 51.

The Opposition also ignores NVIDIA's arguments and this Court's Order concerning the Product Change Notifications ("PCNs").  Plaintiffs still fail to establish a connection between the 2008 chip redesign and the heat cycling issue, or explain why transitioning from high lead to Eutectic solder would require "months to redesign the chip" when NVIDIA had used this same

---

[10] CW7's assertion that NVIDIA "eventually admitted" a chip problem is hardly surprising given that NVIDIA publicly disclosed the issue in July 2008.

design two years prior, and could (and, according to the SCAC, did) "immediately" switch back to it.  Order at 11; Mot. at 19-20; SCAC ¶¶ 27, 64, 67.

### E.  Plaintiffs' Arguments About Other Lawsuits, Hindsight Articles, And Mr. Hara's Statements Do Not Demonstrate Falsity

The Opposition offers no plausible response to NVIDIA's arguments that the other lawsuits, hindsight articles, and Mr. Hara's statements do not demonstrate that any statement was false when made, or create an inference of fraud.

#### 1.  The Ancillary Insurance And Consumer Lawsuits Do Not Show Falsity

Plaintiffs' assertion that the *Great American* insurer lawsuit does not rely on this securities case as a basis for its allegations is untrue.  The *Great American* complaint states:

> NVIDIA has been named as a defendant in at least two securities
> class action lawsuits brought on behalf of all purchasers of NVIDIA
> common stock between November 8, 2007 and July 2, 2008,
> *alleging that NVIDIA knew*, for at least a period of approximately
> eight months before disclosed to the public, that NVIDIA chips
> were failing at excessively high rates and that its chips were
> defective due to an unknown root cause.  RJN Ex. 10 at 34
> (emphasis added)

As explained in Defendants' Motion, Plaintiffs' reliance on the insurer cases to plead a claim is circular and absurd.  Mot. at 20.

Nor does NVIDIA's settlement of a consumer class action (which, not coincidentally, was also filed by Milberg LLP) suggest fraud.  The Ninth Circuit has long held that parties settle for many reasons.  *See, e.g.*, *Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213 (9th Cir. 1990) (settlements often "motivated by desire for peace rather than from any concession of weakness of position").  None of the other authorities Plaintiffs cite support them, and their reliance on the settlement bespeaks desperation.[11]

---

[11] Neither *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) nor *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir. 1999) held that ancillary lawsuits or settlements plead fraud under the PSLRA.  Moreover, Milberg LLP itself has admitted that *The NVIDIA GPU Litigation* involved over two years of "[a]ctive, [c]omplex [l]itigation" that was "hard-fought," and a public settlement that was hardly "quick" or "secret" as in *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 685 (6th Cir. 2005).  *See* Supplemental RJN Ex. 1.  Finally, Judge Rakoff's hostility to non-liability terms in settlements of SEC enforcement actions has no relevance to settlements between private parties in the Ninth Circuit.  *SEC v. Vitesse Semiconductor Corp.*, 2011 WL 976578 (S.D.N.Y. Mar. 21, 2011).

**REPLY MEMO. ISO MOTION TO DISMISS SECOND AMENDED COMPLAINT – CASE NO. 08-CV-04260-RS**

## 2.   The After-The-Fact News Articles Do Not Show Falsity

That the news articles cited by Plaintiffs may "address the technical details of the problem" and "provide context and information regarding industry-known principles" (Opp. at 23-24) does not change the fact that they do not demonstrate falsity.  These articles were published <u>after</u> NVIDIA publicly announced the chip problem.  Nothing in the articles suggests the particular failure mechanism was known before July 2008; if anything, they suggest the opposite.  *See* Mot. at 18.  Plaintiffs' arguments to the contrary are not facts, but are classic and impermissible fraud-by-hindsight.  *See* Mot. at 18; *In re Ligand Pharm., Inc. Sec. Litig.*, 2005 WL 2461151, at *10 (S.D. Cal. Sept. 27, 2005).

## 3.   Mr. Hara's Statements Do Not Establish Falsity

Mr. Hara's statement "is simply an acknowledgement that the Company was working with OEMs to uncover the problem and not an admission that it knew the cause, scope, or nature of the chip problem or that any loss would exceed the normal reserve."  Order at 14.  Defense counsel's indication that NVIDIA was "talking" to HP and Dell about the chip problem in August of 2007 (Opp. at 23) adds nothing new, and cannot revive Mr. Hara's previously rejected statements.  Indeed, when read together with Mr. Hodge's statements, Mr. Hara's comments show nothing more than isolated "adverse event reports" that even Plaintiffs admit do not plead fraud.

## V.   THE OPPOSITION CANNOT OVERCOME THE NON-ACTIONABLE NATURE OF THE CHALLENGED STATEMENTS

Not only were the challenged statements not false when made, but the Opposition all but concedes that these vague statements, forward-looking statements, historical statements of fact, risk factors, and Sarbanes-Oxley certifications were not actionable in the first instance.[12]

---

[12] As detailed in Defendants' opening brief, Sarbanes Oxley certifications (SCAC ¶140) are not independently actionable misstatements and therefore must be dismissed.  *See* Mot. at 25.  The May 22, 2008 statement is the only challenged statement that is not per se non-actionable.  The Opposition, however, fails to demonstrate how it was false when made, and therefore it too must be dismissed.

1

A.  **Vague Statements Such As Those Challenged by Plaintiffs Are Routinely Deemed Non-Actionable Puffery**[13]

2

3      Notwithstanding Plaintiffs' attempt to muddle the applicable legal standard, the

4   Opposition cannot deny that courts routinely dismiss the types of statements challenged by

5   Plaintiffs as non-actionable puffery.[14]  For example, compare NVIDIA's statement that it

6   achieved "another outstanding…year" (SCAC ¶ 118), with the statement that Cornerstone

7   achieved  "outstanding…results," which was dismissed as non-actionable puffery in *In re*

8   *Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005).

9   Even the cases upon which Plaintiffs rely confirm NVIDIA's position.  In *City of Monroe*, for

10  instance, the court dismissed nine of ten challenged statements as non-actionable puffery,

11  including statements similar to those here, such as Firestone had "the best tires in the world,"

12  "global consistent quality," "full confidence" in its products, and "high regard among automakers

13  for [its] strengths in product quality."  *City of Monroe*, 399 F.3d at 670-671.[15]  Remarkably,

14  Plaintiffs attempt to rely upon *Matrixx* despite the Supreme Court's express holding that whether

15  the alleged statements constituted nonactionable "puffery" was not before it.  *Matrixx*, 131 S. Ct.

16  at *1315 n.2.[16]

17

18

19

20

---

21  [13] Plaintiffs argue that Defendants address the wrong portion of the challenged statements.  However, as noted in the Motion, and conveniently ignored in the Opposition, the challenged statements consist of expansive block quotations

22  without any indication of which portions of each "statement" are actually being challenged.  *See* Opp. at 37 n.24. The PSLRA requires Plaintiffs to "specify each statement alleged to have been misleading," and their failure to do so

23  here is fatal to their claims.  15 U.S.C. § 78(u)-4(b)(1).

[14] Plaintiffs misleadingly conflate the standards for forward-looking statements and puffery.  *See In re UTStarcom,*

24  *Inc. Sec. Litig.,* 617 F. Supp. 2d 964, 972 (N.D. Cal. 2009) (applying rule cited by instant Plaintiffs to forward-looking statements), *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996) (same), *In re Oracle Corp. Sec. Litig.*,

25  627 F.3d 376, 388 (9th Cir. 2010) (same).

[15] Firestone's lone actionable statement – "the ***objective data*** clearly reinforces our belief that these are high quality,

26  safe tires" – was actionable because it was not vague and unverifiable, but instead referenced objective data that could "be proven or disproven using standard tools of evidence."  *City of Monroe*, 399 F.3d at 674 (emphasis added).

27  Here, no such statements are claimed to be puffery.

[16] Plaintiffs also disingenuously attempt to apply Matrixx to forward-looking statements, even though the Court

28  expressly held that "Matrixx has not argued that the statements or omissions here are 'forward-looking statement[s].'"  *Matrixx* 131 S. Ct. at *1324 n.14.

**REPLY MEMO. ISO MOTION TO DISMISS SECOND AMENDED  COMPLAINT – CASE NO. 08-CV-04260-RS**

**B.**    **The Opposition Cannot Remedy That the Challenged Forward-Looking Statements Are Non-Actionable**

Plaintiffs cannot dispute the forward-looking nature of the identified statements, or that they were accompanied by meaningful cautionary language.[17]  The PSLRA is clear that such statements fall within the statutory safe-harbor and are *per se* non-actionable <u>regardless of the defendant's state of mind</u>.  *See* 15 U.S.C. § 78u-5(c)(1); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-1112 (9th Cir. 2010).  Plaintiffs' citation of *UTStarcom* to suggest otherwise is mistaken.  Unlike here, the applicability of the safe-harbor was unclear in *UTStarcom*, so the court found it appropriate to consider defendant's state of mind.

Moreover, even if Defendants' state of mind were at issue, which it is not, the SCAC fails to establish that anyone at NVIDIA had <u>actual knowledge</u> that any forward-looking statement was false or misleading when made.  *See* 15 U.S.C. § 78u-5(c)(1); *see also Cutera*, 610 F.3d at 1112-13.  Nor do Plaintiffs plead facts demonstrating any of the forward-looking statements lacked a reasonable basis.  Nothing in the SCAC, for example, suggests that NVIDIA did not have "expertise" in HD graphics and system architecture (SCAC ¶ 127) or was not pursuing a strategy to "achieve market...leadership" (SCAC ¶ 120).

**C.**    **The Opposition Confirms that NVIDIA's Accurate Historical Statements of Fact Are Non-Actionable**

Contrary to Plaintiffs' assertions, disclosure of historical results implies nothing about the future, nor does it create a duty to update as the Opposition suggests.  *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245 (N.D. Cal. 1998); *see also In re Caere Corp.*, 837 F. Supp. at 1058.  *RasterOps,* the lone case cited by Plaintiffs, <u>dismissed</u> nearly identical accurate statements of historical fact to those here.  *Compare In re RasterOps Corp. Sec. Litig.*, 1993 WL 476661 at *9 (N.D. Cal. Aug. 13, 1993) (dismissing statement that "[d]emand across our entire product line remained very strong" as non-actionable statement of historical fact) *with* SCAC ¶118

---

[17] Plaintiffs' incorrectly suggest that the use of "present tense" in these statements means they are not forward-looking.  Opp. at 36.  But a statement's use of the present, past, or future tense does not determine whether it is forward-looking.  *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1067-68 (N.D. Cal. 2001); *Harris v. IVAX*, 182 F.3d 799, 805 (11th Cir. 1999).  The salient inquiry is whether truth or falsity can be discerned only at some point after the statement is made.  *Id.*

1    (challenging statement regarding "strong demand for GPUs"); *RasterOps,* 1993 WL 476661 at

2    \*10 (dismissing statement that "[t]he first quarter of 1991 was somewhat stronger than we had

3    planned") *with* SCAC ¶130 ("best first quarter ever").  The one historical statement not dismissed

4    in *RasterOps* survived only because it was coupled with a non-historical statement conveying

5    "bold projections of future success."  *Id.* at \*11.  The court was unable to "surgically" decouple

6    the historical statement from the actionable statement even though "such statements of historical

7    fact, standing alone, may not be actionable."  *Id.* at \*10.  Here, no historical statement is coupled

8    with an actionable misstatement, so dismissal is warranted.[18]

9              **D.     NVIDIA's Risk Factors Are Non-Actionable**

10          Risk factors are "not actionable to the extent plaintiffs contend defendants should have

11   stated that the adverse factors 'are' affecting financial results rather than 'may' affect financial

12   results."  *In re Leapfrog Enter., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1048-49 (N.D. Cal.

13   2007).[19]   Yet, as the Opposition admits, this is precisely what Plaintiffs contend here.  Moreover,

14   all four cases on which Plaintiffs rely are inapposite.  Three of the cases <u>do not even involve</u>

15   <u>challenges to risk factors</u>.  *See In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113, 1118-1119

16   (9th Cir. 1989); *Huddleston v. Herman & Maclean*, 640 F.2d 534, 544 (5th Cir. 1981); *Belodoff v.*

17   *Netlist, Inc.*, 2009 WL 1293690, at \*6, \*9 (C.D. Cal. Apr. 2009).[20]  The fourth, *Matrixx*, did not

18   even address the falsity of the company's risk disclosures.

19          By Plaintiffs' own concession, the risk statements disclosed both ***past*** problems with

20   defects, as well as the risk of ***future*** issues.  Opp. at 39.  And despite Plaintiffs' allegations,

21   NVIDIA did disclose that it was ***currently*** experiencing chip problems via its warranty reserve,

22   and was not required to, nor should it have disclosed any further detail.  *Zeid v. Kimberley*, 930 F.

23   Supp. 431, 437 (N.D. Cal. 1996) (rejecting argument that risk factors "should have contained

24   specific disclosures of the adverse factors which were then negatively impacting [defendant's]

25
26   [18]Plaintiffs argue that NVIDIA's statement that it was "expecting this positive feedback loop to continue to drive [its] growth" is not an accurate historical statement of fact, but Defendants never claimed that it was.  *See* Mot. at 24.

27   [19] Plaintiffs' effort to distinguish *In re Leapfrog* by arguing that the risk factors there were not false when made is unavailing as they have failed to make any such showing here.

28   [20] The *Belodoff* court referenced Defendants' risk disclosures to support its finding that the challenged statements (which were not risk disclosures) were <u>not</u> misleading.  *Belodoff*, 2009 WL 1293690 at \*8-11.

business"). While Plaintiffs have the luxury of hindsight, it is unclear what more NVIDIA could have disclosed <u>at the time</u> given that that cause and scope of the chip problem were not yet known when it made its SEC filings.

## VI.  THE OPPOSITION HIGHLIGHTS PLAINTIFFS' FAILURE TO PLEAD A COGENT AND COMPELLING INFERENCE OF SCIENTER

Here, the most cogent and compelling inference is that Defendants "delayed releasing information regarding [the chip failures] in order to provide [themselves] an opportunity to review all the evidence" – not fraud. *Matrixx*, 131 S. Ct. at *1324 n.15; *see also Slayton*, 604 F.3d at 774 ("[C]ommencement of an investigation and prompt disclosure of [a Company's] findings must be counted against any inference of fraudulent intent."); *Karpov*, 2010 WL 4867634 at *9 (conducting an investigation in response to discovery of a problem weighs against an inference of scienter). The Opposition cannot remedy the SCAC's failure to plead any competing inference, let alone one that is cogent and compelling. It conspicuously ignores that Mr. Huang had no motive to commit fraud and that the Court already held that his trading pattern and NVIDIA's repurchase plan negate any inference of scienter. Order at 19-20. Instead, the Opposition retreats to the previously rejected core operations and collective scienter theories, neither of which applies here. Order at 19.

### A.  The Facts Negate Any Potential Inference Of Mr. Huang's Scienter

The Court previously held that Mr. Huang's trading pattern was neither unusual nor suspicious, nor "inten[ded] to maximize profits from an artificially inflated stock price." Order at 20 (Mr. Huang was a "net acquirer during the Class Period whose stock sales constituted only 2% of his holdings and were less than the three previous quarters."). The SCAC offers nothing to rebut this conclusion and the Opposition is conspicuously silent on the issue.

Instead, the Opposition again tries to elevate the importance of Mr. Huang's adoption of a 10b5-1 plan. The argument goes nowhere. First, the issue is whether his trades were unusual or suspicious, not the means by which he executed them. Order at 19-20; *see also In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999). Even if Mr. Huang had entered the plan in possession of material non-public information, that would not transform otherwise

1  unremarkable sales patterns into unusual or suspicious ones. The plan would merely be

2  disregarded, and as this Court has previously held, Mr. Huang's trading pattern still would not

3  support the requisite strong inference of scienter. Order at 19-20; *Freudenberg v. E\*Trade Fin.*

4  *Corp.*, 712 F. Supp. 2d 171, 200 (S.D.N.Y. 2010) (where plan allegedly entered into with

5  possession of material information, court disregarded plan and examined defendant's trading

6  pattern).

7      Second, Plaintiffs argue that Mr. Huang entered into the plan with possession of material

8  information, but ignore that the plan obligated Mr. Huang to sell shares in the future. RJN Exs.

9  24-27. Thus, by Plaintiffs' own reasoning, Mr. Huang committed himself to future losses when

10  the stock price fell after July 2, 2008. Such an implausible inference cannot stand.

11      Left with no particularized facts supporting the required strong inference of Mr. Huang's

12  scienter, Plaintiffs again attempt to invoke the core operations theory. But as this Court has held,

13  this case is not one of the "rare circumstances" in which that theory applies. Order at 18-19.

14  There are no particularized facts demonstrating Mr. Huang's exposure to information suggesting

15  that NVIDIA was at fault for the chip failures at the time the challenged statements were made.

16  Nor was NVIDIA's fault "patently obvious." *Zucco*, 552 F.3d at 1001. That Mr. Huang was an

17  executive of NVIDIA and that GPUs and MCPs were important to NVIDIA's business, without

18  more, does not give rise to an inference of scienter as the Opposition erroneously suggests. Opp.

19  at 26-27, 31; *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783 (9th Cir. 2008).

20  **B.      The Opposition Fails To Set Forth Any Theory of Scienter For NVIDIA**

21

22      The Opposition offers <u>no</u> theory of scienter as to NVIDIA, let alone one that is cogent and

23  compelling. The best one can discern from Plaintiffs' barrage of speculation and argument is that

24  NVIDIA acted with deliberate recklessness by failing to perform adequate testing and releasing

25  chips that "it knew" were subject to potential failure. Plaintiffs' theory is unsupported by the

26  facts or by logic.

27

28

18

1   As the Hodge Declaration makes clear, NVIDIA's chips passed extensive "industry

2   standard" tests before release <u>and</u> after they were incorporated into computers.  Hodge ¶¶ 21-22,

3   39-41.  There are no <u>facts</u> suggesting otherwise or that any tests gave cause for concern.

4   Nor is Plaintiffs' theory plausible.  As Plaintiffs admit, it is far more expensive to repair or

5   replace defective chips than to simply redesign them in the first place.  SCAC ¶ 58; Opp. at 21.

6   Thus, by Plaintiffs' own theory, NVIDIA knowingly chose a path that would cost it <u>more</u> in

7   future remediation costs and reputational harm than if it delayed shipment and redesigned its

8   chips instead.   Why would NVIDIA chart such a course?  This fundamental question must be

9   answered by well pleaded facts.  It is not.

10   Absent a plausible theory of fraud for NVIDIA, the Opposition resorts to misplaced

11   reliance on dicta in *Glazer Capital Mgmt., L.P. v. Magistri*, 549 F.3d 736, 744-45 (9th Cir. 2008)

12   to argue that it has pled "collective scienter."  To the extent it exists, "collective scienter" is an

13   exception to the general rule that the person making the false or misleading statement must act

14   with the requisite intent.  This exception allows a court to draw an inference of corporate scienter

15   in rare "circumstances in which a company's public statements were so important and so

16   dramatically false that they would create a strong inference that at least some corporate officials

17   knew of the falsity upon publication."  *Glazer*, 549 F.3d at 744.  No Court in the Ninth Circuit,

18   including *Glazer*, has applied this controversial theory.[21]  Indeed, as the Court previously held,

19   even if it were to adopt collective scienter, this is not one of the cases in which any of the

20   statements are "so important and so dramatically false" that it would apply.  Order at 19.

21   **VII.    PLAINTIFFS CANNOT PLEAD LOSS CAUSATION**

22   Lastly, courts can and routinely do dismiss securities cases for failure to plead loss

23   causation.  *See* Order at 19; *In re Maxim Integrated Prod., Inc. Sec. Litig.*, 639 F. Supp. 2d 1038,

24   1044-45 (N.D. Cal. 2009).  The Opposition concedes that NVIDIA's stock price <u>increased</u> in

25   response to two subsequent disclosures about the chip failures, which reinforces that the initial

26   stock drop was caused by the earnings miss and lowered guidance, not the chip problem.  Mot. at

---

27   [21] Collective scienter is akin to the group pleading doctrine, which courts in the Ninth Circuit have consistently
28   rejected as  inconsistent with the PSLRA. *See Petrie v. Elec. Game Card Inc.*, 2011 WL 165402 at *3 (C.D. Cal.
Jan. 12, 2011).

**REPLY MEMO. ISO MOTION TO DISMISS SECOND
AMENDED COMPLAINT – CASE NO. 08-CV-04260-RS**

31-32; SCAC ¶ 151.  The SCAC therefore does not overcome that the "far more plausible reason for the resulting drop in [NVIDIA's] stock price" was that "the Company failed to hit prior earnings estimates," not because of fraud.  Order at 21 (*citing Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008)); *see also In re BankAtlantic Bancorp, Inc. Sec. Litig.,* 2011 WL 1585605, at *19 (S.D. Fl. April 25, 2011) ("[W]here a fraud is revealed contemporaneously with the announcement of other negative, but non-fraud-related information, plaintiffs bear the burden of disaggregating the effect of the unrelated negative information on the stock price.").  The SCAC pleads nothing more than the "mere possibility" of loss causation, and so must be dismissed.  *See Twombly*, 550 U.S. at 557-58 ("we explained [in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)] that something beyond the mere possibility of loss causation must be alleged[.]").

## VIII.   PLAINTIFFS CANNOT PLEAD A SECTION 20(A) VIOLATION

Because Plaintiffs fail to plead a primary violation of Section 10(b), Plaintiffs' Section 20(a) claim also fails.  *Zucco*, 552 F.3d at 990.

## IX.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion and dismiss the SCAC.  As Plaintiffs have had ample opportunity to amend their claims the dismissal should be with prejudice.  *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097-1098 (9th Cir. 2002).

DATED:  May 12, 2011               Respectfully submitted:

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  _____*/s/ Michael D. Torpey*_____
Michael D. Torpey

Attorneys for Defendants
NVIDIA CORPORATION and JEN-HSUN HUANG